**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RUSSELL COHEN,                          )
                                        )        3:05-CV-00665 PMP (VPC)
                Plaintiff,              )
                                        )
        vs.                             )        **REPORT AND RECOMMENDATION**
                                        )        **OF U.S. MAGISTRATE JUDGE**
JAMES BACA,                             )
                                        )
                Defendant.              )        February 20, 2007
_____ )

        This Report and Recommendation is made to the Honorable Philip M. Pro, United States

District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendant's motion to dismiss (#20).

Plaintiff objected (#39) and defendant replied (#40).  The court has thoroughly reviewed the

record and the motions and recommends that defendant's motion to dismiss (#20) be granted.

**I.  HISTORY & PROCEDURAL BACKGROUND**

        Plaintiff Russell Cohen ("plaintiff"), a *pro se* prisoner, is currently incarcerated at Nevada

State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#41).

 Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging that defendant violated his

First Amendment right to the free exercise of religion, his rights under the Religious Land Use

and Institutionalized Person Act ("RLUIPA"), and his First and Fourteenth Amendment rights

to access to the courts, Fourteenth Amendment rights to equal protection and due process, and

Eighth Amendment right to be free from cruel and unusual punishment (#16).[1]  Plaintiff names

_____

        [1] On December 7, 2005, plaintiff filed a motion to proceed *in forma pauperis* and an emergency
motion for a temporary restraining order, alleging that defendant was violating his First Amendment right
to the free exercise of religion by denying him a kosher meal at NSP (#s1 and 3).  Plaintiff alleged that
although he had received kosher meals while incarcerated at Ely State Prison, the defendant denied him
kosher meals because the Medical Division had placed him on a medical diet for diabetes.  *Id.*  On April 6,

as defendant James Baca, NSP Associate Warden of Programs ("defendant").  *Id.*

In count I, plaintiff alleges that defendant denied him his right to a kosher meal on November 15, 2005, in violation of his First Amendment right to freely exercise his religion and his rights under RLUIPA, 42 U.S.C § 2000cc.  *Id.*, p. 4.  Plaintiff alleges that while incarcerated at Ely State Prison ("ESP"), he received kosher meals.  *Id.*  After his transfer to NSP, plaintiff requested kosher meals, however, defendant allegedly took "several months" to consider plaintiff's request before denying it.  *Id.*  Defendant based his denial of plaintiff's request on a provision of Administrative Regulation ("AR") 814, which states that medical meals take precedence over religious meals.  *Id.*  Although plaintiff denies it, the prison alleges that plaintiff was on a prescribed medical meal to treat his diabetes.

In count II, plaintiff alleges a violation of his right to equal protection of the law under the Fifth and Fourteenth Amendments.  *Id.*, p. 5.  Plaintiff alleges that during his time at NSP, he observed prisoners of other faiths, such as "the Muslims, the Wiccans, the Earth-Based religions, and others" receive benefits such as plots of land for worship and special meals required by each religion.  *Id.*  Plaintiff alleges that the prison bestowed no such treatment or benefits on prisoners of the Jewish faith.  *Id.*

In count III, plaintiff alleges a violation of his right to procedural due process under the Fifth and Fourteenth Amendments.  *Id.*, p. 5A.  Plaintiff alleges that during his incarceration at ESP, he received a kosher meal, but that when he arrived at NSP, defendant denied him a kosher meal.  *Id.*  Plaintiff contends that defendant's denial violated his procedural due process rights because he has a liberty interest in receiving a kosher meal, but was not given notice and an

---

2006, the court denied as moot the plaintiff's motion for a temporary restraining order because the prison had returned the plaintiff to ESP (#6).  Plaintiff filed another motion to proceed *in forma pauperis* on April 26, 2006 and attached his complaint (#7).

opportunity to challenge the denial in a deprivation hearing.  *Id*.

In count IV, plaintiff alleges that defendant and his "agents" denied him access to the courts in violation of his First and Fourteenth Amendment rights.  *Id*., p. 5B.  Plaintiff alleges that defendant destroyed an informal grievance plaintiff filed on November 25, 2005, and then would not let plaintiff appeal the informal grievance because he did not have a grievance log number.  *Id*.  Additionally, plaintiff alleges that on December 12, 2005, he received in the mail an empty envelope, which he contends had contained a copy of the temporary restraining order in this case.  Plaintiff alleges that defendant destroyed this copy of the temporary restraining order that was meant to effectuate service.  *Id*.

In count V, plaintiff alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  *Id*., p. 6.  Plaintiff alleges that "the denial of the Kosher Diet could be a deliberate indifference to my freedom to worship and participate in my faith" and that such a denial is a "cruel and unusual way of punishing me and violates my right to worship and practice my faith accordingly."  *Id*.  Plaintiff alleges that the fact that defendant has made him eat non-kosher food, which his faith believes taints "not only the body, but the soul itself," is an unmeasurable injury that violates contemporary standards of decency and deprives him of a basic necessity of life.  *Id*.

The evidence shows that defendant denied plaintiff's request for a kosher meal on November 15, 2005 (#20, Exhibit C to Affidavit of James Baca, BACA 001).  The memorandum stated,

> You have met the criteria for obtaining a religious diet according to Administrative Regulation 814.  However, you're currently on a medical diet for your diabetic condition.
>
> AR 814 page 3 of 5, 1.3 states approved inmates participating in a religious diet who are prescribed a specific diet by the Medical

3

Division will be fed the medical diet.

Therefore, no religious diet will be provided until the prescribed medical diet is discontinued.

*Id*.

Defendant moves to dismiss all five counts on various grounds (#20). The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). For the movant to succeed, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Barnett*, 31 F. 3d at 816; *see also Rothman v. Vedder Park Mgt.*, 912 F.2d 315, 316 (9th Cir. 1990).

Under section 1983, plaintiff must allege that (1) defendants subjected him to the deprivation of a right, privilege or immunity guaranteed by the U.S. Constitution or U.S. law, and (2) that the defendant acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "'Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights

Act.'" *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (quoting *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977)).  "The plaintiff must 'allege with at least some degree of particularity overt acts which defendants engaged in' that support the plaintiff's claim." *Id.*, quoting *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir. 1964).

"As a general rule, ' a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001) (*quoting Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).  However, Rule 12 provides,

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6).

**2. Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.  In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56© mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

### 3. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2002).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001).  All available remedies

must be exhausted before a complaint under section 1983 may be entertained. *Id.* at 738. Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002), *citing Booth*, 532 U.S. at 739-40, n.5. Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id.* at 741, n.6 ("[w]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). However, an inmate's failure to comply with the exhaustion requirements in section 1997e(a) does not deprive the federal court of jurisdiction. *Rumbles v. Hill*, 182 F.3d 1064, 1068 (9th Cir. 1999), *overruled on other grounds in Booth v. Churner*, 532 U.S. 731 (2001). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Jones v. Bock*, __ U.S. __, 127 S.Ct. 910 (2007); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

Recently, the Supreme Court held that the PLRA requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo*, __ U.S. __, 126 S.Ct. 2378 (2006). "Proper exhaustion" was defined as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. at 2385 (citations omitted). The Court stated that "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings." *Id*.

This court has recently read Justice Alito's opinion in *Woodford* as

> [s]etting forth two tests for "proper exhaustion." The "merits test" is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels. The "compliance test" is satisfied when a

plaintiff complies with all "critical procedural rules," including agency deadlines. A finding that a plaintiff has met either test is sufficient for finding "proper exhaustion." Defendants must show that Plaintiff failed to meet both the merits test and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies.

*Jones v. Stewart*, 457 F. Supp.2d 1131, 1134 (D. Nev. 2006).  In *Jones*, this court rejected the defendants' proposed reading of *Woodford*, which would have required the defendants to show only that plaintiff failed to meet *either* the merits test *or* the compliance test.  *Id*.  Such a reading, the court stated, "treats timeliness of grievances rather than proper exhaustion as the touchstone of *Woodford*.  We believe that this is not the reading intended by the Court in *Woodford* and does not further the policy objectives of the PLRA's exhaustion requirement."  *Id*.

The NDOC grievance procedure is governed by A.R. 740 (#20, Exhibit C).  In order to exhaust available remedies, A.R. 740 requires as follows: (1) an informal review process; (2) a first level formal written grievance appealing the informal grievance decision to the warden; and (3) a second level grievance appealing the first level grievance decision, which is decided by the Assistant Director of Operations.  *Id*.  A.R. 740 requires NDOC officials to respond at each grievance level within a specified time period, beginning from the date of receipt of the inmate's grievance.  *Id*.

**B.  Analysis**

**1. Failure to Exhaust Administrative Remedies**

Although defendant has filed a motion to dismiss, because he has presented evidence outside the pleadings with respect to his affirmative defense of failure to exhaust administrative remedies, the court treats that portion of defendant's motion to dismiss as a motion for summary

judgment.[2]  *See* Fed.R.Civ.P. 12(b)(6).  Therefore, with respect to this affirmative defense, the court views all evidence and any inferences arising from the evidence in the light most favorable to the plaintiff.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  Once defendant submits evidence demonstrating the absence of any genuine issue of material fact, plaintiff may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Defendant argues that plaintiff admitted in his complaint that he did not follow the proper grievance procedures (#20, p. 5, *citing* #7, p. 5B).  Defendant contends that plaintiff "refused to follow the proper procedures" and is now attempting to circumvent the grievance process.  *Id*. Defendant argues that plaintiff never finished the grievance process and prematurely filed his complaint, and moreover, had plaintiff waited to file his complaint, his grievance would have been resolved.  *Id*., p, 6, *citing* Grievance No. 2006-24-6597, BACA 003.  Defendant urges that the fact that plaintiff's grievance has been resolved demonstrates the importance of the internal grievance process without involving the court.  *Id*.  Finally, defendant asserts that because plaintiff is no longer housed at NSP, his complaint is moot.[3]  *Id*.

Plaintiff's position is that he attempted to exhaust his administrative remedies but that defendant prevented him from doing so (#39, pp. 13-16).  Plaintiff argues that on November 25, 2005, he filed an informal grievance regarding defendant's denial of plaintiff's request for a kosher meal.  *Id*., pp. 13-14, *citing* Exhibit U and Plaintiff's Affidavit.  Plaintiff alleges that

---

[2] Plaintiff received notice that the court would treat a motion to dismiss as a motion for summary judgment if defendant submitted evidence in support of his motion to dismiss (#22, pp. 1-2).

[3] The court notes that at the time the defendant filed the current motion, the prison had transferred the plaintiff to ESP.  *See* #19, Plaintiff's Notice of Change of Address to ESP, dated July 26, 2006. However, plaintiff has since been transferred back to NSP.  *See* #41, Plaintiff's Notice of Change of Address to NSP, dated January 12, 2007.  Therefore, the court disregards defendant's mootness argument.

defendant never responded to or returned this informal grievance, which meant that plaintiff never received a grievance number. *Id*. Plaintiff argues that the defendant then refused to allow him to proceed with an appeal of his November 25, 2005 "missing" informal grievance because plaintiff did not have a grievance number. *Id*. Plaintiff contends he thereafter inquired about this issue through kites and other grievances, but defendant never asked to see a copy of the missing informal grievance, leaving plaintiff to conclude that defendant wanted to ignore that plaintiff ever filed his informal grievance. *Id*., p. 14, *citing* Exhibits FF, GG, and HH. Plaintiff argues that because he has stated valid reasons for not exhausting his administrative remedies – "(1) interference by Baca and his agents, (2) refusal to provide grievance number so He could further proceed, and (3) thrats [sic] and actual harm by using the grievance procduiure [sic] by ADO/DDO Greg Cox" – exhaustion was not "available" to him (#39, p. 15). Therefore, defendant should be estopped from arguing the affirmative defense of failure to exhaust administrative remedies and plaintiff should be allowed to proceed with his lawsuit. *Id*., pp. 15-16.

### (a) Counts I, II, III and V

Count I concerns the violation of plaintiff's First Amendment rights and his rights under RLUIPA in relation to defendant's denial of plaintiff's kosher meal request because plaintiff was on a prescribed medical diet to treat his diabetes (#16, p. 4). Counts II, III and V involve the same set of facts, but respectively allege violations of his right to equal protection, right to due process, and right to be free from cruel and unusual punishment. *Id*., pp. 5, 5A and 6.

The court first addresses defendant's argument that since the date plaintiff filed his complaint, the prison has resolved plaintiff's grievance regarding the denial of his kosher meal. *See* #20, p. 6. As plaintiff correctly points out, the grievance to which the defendant refers,

10

grievance number 2006-24-6597, involves the denial of plaintiff's kosher meals during Passover at ESP (#20, Exhibit C to Affidavit of James Baca (Informal Grievance, BACA 008-020; First Level Grievance, BACA 006-007; Second Level Grievance, BACA 003-005)).  While the Second Level Grievance response from Glen Whorton is quite favorable to plaintiff and states "grievance resolved," nowhere does it address defendant Baca's denial of the plaintiff's kosher meals at NSP on November 15, 2005.  *Id*.

The court has carefully reviewed the parties' submitted evidence.[4]  The evidence before the court which relates solely to the denial of plaintiff's kosher meal request at NSP is as follows:

- On September 6, 2005, plaintiff sent a kite to the NSP Chaplain asking how to obtain a kosher meal (#39, Exhibit A).

- On September 13, 2005, plaintiff sent a kite to his caseworker requesting a kosher meal, noting the prison served him kosher meals during his incarceration at ESP. The caseworker responded "We have no provisions for kosher meals at NSP" (#39, Exhibit B).

- On October 10, 2005, plaintiff sent a kite to the NSP Chaplain alleging that NSP discriminates against people of the Jewish faith because there were no posted signs in the prison regarding the Jewish holidays, but there were signs for services for Muslims, Native Americans and "Earth-Based" religions.  Plaintiff stated he wanted to participate in Jewish services and be served kosher meals (#39, Exhibit D).

- On October 15, 2005, plaintiff sent a kite to the NSP Food Services Manager asking for a kosher meal.  The Manager responded, "You are not approved for a kosher diet according to NDOC records.  Furthermore, kosher diets are not served at NSP.  Ely State Prison is the only institution serving kosher diets.  Furthermore, I thought your last request was for Ramadan according to the Chaplain?" (#39, Exhibit F).

---

[4] The court notes that the evidence submitted by the parties is less than ideal.  Plaintiff submitted quite a bit of extraneous and irrelevant evidence (#39, Exhibits C, E, R, T, V, W, X, DD, EE and II). Additionally, some of plaintiff's exhibits, which appear to be copies of kites, are mostly illegible and impossible to read (#39, Exhibits L, M, N, O, and Y).

Defendant's exhibits are confusing in that defendant filed Exhibits A, B, C and D, but also filed Exhibits A, B and C to Exhibit A (#20).  Moreover, defendant's copies of plaintiff's grievances are not in any sort of easily referenced order, for example, by date or by grievance number.  Defendant also submitted some of the same grievances in Exhibits B to Affidavit of James Baca as he did in Exhibit C to Affidavit of James Baca.

The court cautions the parties to submit well-marked and decipherable evidence in the future, as it is time-consuming for the court to root through the files to find the information it requires.

- On October 16, 2005, plaintiff sent a kite to caseworker Walsh requesting a meeting to discuss various issues, including a kosher diet.  Walsh responded, "We have a separate kosher diet kite and will meet w/AWP Baca about this" (#39, Exhibit G).

- On October 16, 2005, plaintiff sent another kite to caseworker Walsh regarding his kosher diet, and stated that he had sent kites to many people but the prison still had not responded.  Walsh responded, "Still working on issue" (#39, Exhibit H).

- On October 18, 2005, plaintiff sent a kite to caseworker Walsh complaining about the response he had received from the Food Services Manager.  On November 8, 2005, Walsh responded, "Chaplain Bret discussed" (#39, Exhibit I).

- On October 20, 2005, plaintiff sent a kite to the NSP Chaplain asking for a meeting regarding the response he had received from the Food Services Manager.  The kite indicates the Chaplain spoke with the plaintiff personally (#39, Exhibit J).

- On October 20, 2005, plaintiff sent a kite to the NSP Food Services Manager stating that his prior response regarding his kosher diet request was unacceptable and that the plaintiff had a constitutional right to a kosher meal.  Caseworker Walsh responded, "Seen w/ Chaplain 10/24/05. Discussed. Appears to be miscommunication" (#39, Exhibit K).

- On November 2, 2005, plaintiff sent a kite to caseworker Walsh stating that he had waited patiently for two months but still had not received an answer regarding his kosher meal, and he requested permission to file an informal grievance.   On November 2, 2005, Walsh responded, "You may file, I can not resolve" (#39, Exhibit P).

- On November 15, 2005, plaintiff sent a kite to AWP Baca stating that Baca had verbally informed plaintiff that plaintiff had been denied his kosher meal because of his diabetic meal, and plaintiff was waiting for a written response so that he could file an informal grievance.  On November 16, 2005, Baca responded, "You will receive my written response soon" (#39, Exhibit Q).

- Defendant issued a written memorandum dated November 15, 2005, denying plaintiff's request for a kosher meal and stating that plaintiff's prescribed medical diet for diabetes took precedence over religious meals pursuant to AR 814 (#20, Exhibit C to Affidavit of James Baca, BACA 001).

"Proper exhaustion" of administrative remedies, which is defined as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)," is required before a prisoner may proceed in federal court.  *Woodford v. Ngo*, __ U.S.

12

__, 126 S.Ct. 2378, 2385 (2006) (citations omitted). This court also considers the opinion in *Woodford* to require the plaintiff to meet either the "merits" test or the "compliance" test. *Jones v. Stewart*, 457 F. Supp.2d 1131, 1134 (D. Nev. 2006).

AR 740 allows the prison twenty-five days to respond to an inmate's informal grievance (#20, Exhibit C, AR 740.02, 1.3.3.1, p. 12). The time is measured from the date the informal grievance is received by the grievance coordinator to the date it is returned to the inmate. *Id*. Both the first level appeal and second level appeal processes have twenty-five day time limits as well. *Id*., AR 740.02, 1.3.3.2-3, pp. 12-13. Inmates have five days to appeal to the next level of review after receipt of a response. *Id*., AR 740.02, 1.3.4, p. 13. "Inmates may proceed to the next level if no response is received within the applicable time frames." *Id*., AR 740.02, 1.3.6, p. 13.

In this case, the court concludes that the plaintiff has not met either the merits test or the compliance test, and therefore, has not properly exhausted. Plaintiff submits Exhibit U as proof that he filed an informal grievance on November 25, 2005 (#39, Exhibit U). Exhibit U is indeed an informal grievance that, while partially illegible, appears to be a grievance alleging that the denial of plaintiff's kosher meal violated his First Amendment rights (p. 3 of 7), rights pursuant to RLUIPA (p. 3 of 7), Eighth Amendment rights (p. 3-4 of 7), right to due process (p. 4 of 7), and right to equal protection (p. 5 of 7). However, plaintiff's submitted copy of Exhibit U contains no date, time or plaintiff's signature; therefore, it is impossible for the court to determine when or if plaintiff filed this informal grievance. *Id*.

Even assuming it is true that plaintiff filed an informal grievance on November 25, 2005, plaintiff has provided no evidence that he filed an appeal for the missing informal grievance. Plaintiff alleges that after he filed his informal grievance on November 25, 2005, he waited for a response, but never received one (#16, p. 5B). Plaintiff admits he did not appeal to the next

13

level, but explains this failure by alleging that an unnamed NSP caseworker told him that he could not file a first level appeal without a grievance number. Plaintiff argues that this misinformation prevented him from filing an appeal to his November 25, 2005 missing informal grievance. However, aside from his own allegation, plaintiff presents no evidence of such a conversation.

Furthermore, it is obvious that plaintiff knows the procedure in the event that the prison fails to return a grievance. On December 20, 2005, plaintiff filed a second level grievance for a related disciplinary issue (#20, Exhibit C to Affidavit of James Baca, Grievance No. 2005-24-8474, BACA 041).[5] In this grievance, plaintiff alleged that the prison has not timely returned his first level appeal and stated that "AR 740.02(1.3.6)" allowed him to "proceed to the next level if no response is received within the applicable time frame. Therefore, I am proceeding to the next level." *Id*. Plaintiff clearly knows the grievance procedures well – in addition to this December 20, 2005 grievance, plaintiff's proficiency is evidenced by numerous other exhibits. *See* #39, Exhibits CC, DD, EE, FF, GG, HH, and II (demonstrating an ability to complete the grievance process by filing informal grievances and first and second level appeals).

As for plaintiff's argument that defendant never requested a copy of the November 25, 2005 missing informal grievance, it is unclear to the court why plaintiff never submitted a copy to defendant. AR 740 requires that when a grievance is not returned, the inmate may proceed to the next level (#20, Exhibit C, AR 740.02 (1.3.6), p. 13). The inmate must attach all "relevant documentation" to his appeal, which here would be a copy of the original November 25, 2005 informal grievance the plaintiff claimed he filed. *Id*., AR 740.02 (1.5.2), p. 16.

Plaintiff's grievances during early 2006 primarily dealt with the fact that plaintiff thought

---

[5] This appeal is relevant only to demonstrate that plaintiff knew the procedure pursuant to AR 740 if a grievance was either not timely returned or not returned at all by the prison.

defendant had destroyed certain grievances and legal mail, thereby denying him access to the courts (#39, Exhibits FF, GG and HH).  Plaintiff filed an informal grievance on February 20, 2006, alleging that defendant Baca had refused to respond to and/or had destroyed three of his informal grievances (#39, Exhibit HH, Grievance No. 2006-4-2761; *see also* #20, Exhibit C to Affidavit of James Baca, BACA 023-030).  The prison denied his informal grievance on March 30, 2006 because the plaintiff failed to list any grievance numbers for the prison to research.  *Id*. Plaintiff appealed this decision to the first level on April 21, 2006, and for the first time in any of his 2006 grievances, identified one of the allegedly destroyed grievances as the November 25, 2005 informal grievance complaining about the denial of his requested kosher meal (#39, Exhibit HH, Grievance No. 2006-4-2761 ("AWP Baca knows darn well that he has tampered with my filed grievances especially when one of them dealt with him and my kosher diet and my filed lawsuit against him!  He has purposely destroyed it to interfere with that lawsuit!... It was filed on 11-25-05 at 6pm and he knows [sic] too!")).  The prison denied his first level appeal for grievance number 2006-4-2761 on May 12, 2005, and the second level appeal on June 30, 2006. *Id*.  Plaintiff received the second level appeal response on July 13, 2006.  *Id*.

Even if the court liberally construes grievance number 2006-4-2761 as sufficient to exhaust plaintiff's administrative remedies as to his First, Eighth and Fourteenth Amendment rights and rights pursuant to RLUIPA,[6] the plaintiff still failed to exhaust his administrative remedies *prior to* filing his lawsuit.  Plaintiff brought this action on April 24, 2006 when he filed a motion to proceed *in forma pauperis* and attached his complaint (#7).  The prison did not make

---

[6] The court would not so construe this grievance because it is centered around plaintiff's alleged denial of access to the grievance process.  Plaintiff does not allege anywhere in grievance number 2006-4-2761 that the denial of his kosher meal violated his constitutional rights.  Instead, it appears that plaintiff's mention of the November 25, 2005 grievance in his first level appeal was meant to provide context to the prison as to which grievances plaintiff was alleging had been destroyed by defendant Baca (#39, Exhibit HH, Grievance No. 2006-4-2761).

1    its final decision on the plaintiff's second level appeal for grievance number 2006-4-2761 until

2    June 30, 2006 and plaintiff did not received the denial until July 13, 2006 (#39, Exhibit HH,

3    Grievance No. 2006-4-2761, Second Level Grievance).   The PLRA requires that prisoners

4    exhaust administrative remedies before brining an action in federal court.  *Andrews v. King*, 398

5    F.3d 1113, 1116, n. 2 (9 Cir. 2005) (*citing* 42 U.S.C. § 1997e(a) ("No action shall be brought...

6    until such administrative remedies... are exhausted").

7

8        It is very clear that plaintiff spent much of September through November 2005 trying to

9    obtain a kosher meal.  He drafted numerous kites to caseworkers, the Chaplain, the Food Service

10   Manager and prison administration.  The prison appears to have frustrated the plaintiff at every

11   level and given different answers as to why it would not give him kosher meals.  The court has

12   read the NDOC Director's response to plaintiff's second level appeal regarding the denial of his

13   Passover meals, and finds the circumstances set out in the memorandum troubling.  *See* #20,

14   Exhibit C to Affidavit of James Baca, Grievance No. 2006-24-6597, Second Level Grievance,

15   BACA 003-005.   Director Whorton's response essentially states that while some of the

16   responsibility lies with the prisoner to notify the prison of his specific religious calendar in time

17   to prepare for holidays, the prisoner has First Amendment rights as well as rights pursuant to

18   RLUIPA that must be honored by the prison.  *Id*., BACA 003.  Director Whorton states, "There

19

20   seems to be some miscommunication and laxity in attending to the religious needs of this inmate

21   who has made it clear to everyone that he is Jewish and wants to follow the Jewish rituals

22   throughout the year... certainly the inmate's legitimate religious requirements were not addressed

23   appropriately... inmates have a right to have their religious needs met.  If this were done properly,

24   no complaints or lawsuits would be appropriate."  *Id*.  The court emphatically agrees.

25

26       However, it is also clear that plaintiff is very familiar with the grievance process, as he

27

28

16

quite frequently takes advantage of his right to file grievances.  As such, plaintiff knew that to properly grieve the denial of his kosher meal, he was required to appeal the missing November 25, 2005 informal grievance or start anew.  Unfortunately, he did not do so despite clear evidence that he knew the process.

Based on the evidence, it is clear that the plaintiff failed to meet the "merits" test because the prison never addressed plaintiff's claim on its merits, and plaintiff did not appeal through all the required levels.  *Jones v. Stewart*, 457 F.Supp.2d 1131, 1134 (D. Nev. 2006).  Plaintiff also did not meet the "compliance" test – plaintiff failed to comply with the requirements of AR 740 when he did not appeal the missing grievance.  *Id*.  Although the court dislikes dismissals on procedural grounds, the Supreme Court has been very clear that "proper" exhaustion is required for prisoners to proceed with lawsuits.  *See Woodford v. Ngo*, __ U.S. __, 126 S.Ct. 2378, 2385 (2006) ("Proper exhaustion" is defined as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").  The court finds that there is no genuine issue of material fact as to whether plaintiff properly exhausted his administrative remedies and grants the defendant's motion to dismiss as to counts I, II, III and V.

### (b) Count II

Aside from the denial of his requested kosher meal, plaintiff also alleges in count II that defendants violated his right to equal protection when they denied him access to religious ceremonies and meals during Hanukkah, while the prison assisted other religions in worshiping during their respective holidays (#16, p. 5).

The evidence reveals that plaintiff filed an emergency grievance on December 28, 2005, and an informal grievance on January 3, 2006, complaining that the prison denied him his constitutional rights because it failed to provide him with Hanukkah supplies (#20, Exhibit B to

Affidavit of James Baca, Grievance No. 2006-4-1047).   The prison denied his emergency grievance because the prison found it was not an emergency. *Id*.  The defendant denied plaintiff's informal grievance through a memorandum sent to plaintiff on January 27, 2006, which essentially stated that NSP was reviewing a number of religious requests,  the Chaplain had been researching plaintiff's request, the prison had gone through much "transition" during the time frame of plaintiff's requests, it was "unfortunate" that there was no resolution to plaintiff's request during plaintiff's time of observance, and defendant hoped there would be regulations in place by next year's observance. *Id*.  Defendant further stated that there was no intentional effort to deny plaintiff his religious practice. *Id*.

It appears that plaintiff attempted to file a first level appeal for this grievance after the prison returned plaintiff to ESP (#20, Exhibit C to Affidavit of James Baca, Grievance No. 2006-4-1047, BACA 043 (AWP Endel's February 21, 2006 Memorandum to NSP Grievance Coordinator)).  However it is not clear what happened to the grievance after this.  There is no evidence before the court that the plaintiff completed the grievance process for grievance number 2006-4-1047.  Plaintiff does not allege in his complaint that anyone intentionally destroyed his first or second level grievances for grievance number 2006-4-1047; while plaintiff has alleged that defendant destroyed certain grievances, this is not one of them (#16, p. 5B).  Thus, there are no genuine issues of fact as to whether plaintiff exhausted his administrative remedies in relation to his allegation of a violation of his right to equal protection for the denial of Hanukkah supplies.  The court grants defendant's motion as to count II in its entirety.

### (c) Count IV

In count IV, plaintiff alleges that defendant and his "agents" denied him access to the courts in violation of his First Amendment rights. *Id*., p. 5B.  Plaintiff alleges that defendant

destroyed his November 25, 2005 informal grievance and would not let him appeal the informal grievance because he did not have a grievance log number. *Id.* Additionally, plaintiff alleges that on December 12, 2005, he received in the mail an empty envelope that had contained a copy of the temporary restraining order in this case, which he had sent to defendant to serve him. *Id.* Plaintiff alleges that defendant destroyed it. *Id.*

The court conducted an exhaustive review all of plaintiff's exhibits, and concludes that the evidence demonstrates that plaintiff did not exhaust his administrative remedies. With respect to his claim that defendant interfered with his access to the courts by destroying/not responding to his November 25, 2005 informal grievance, on January 21, 2006, plaintiff filed an informal grievance alleging that defendant had not returned three of his informal grievances, and that a caseworker had informed him that he could not file a first level appeal for any of the missing informal grievances without a grievance number (#39, Exhibit GG, Grievance No. 2006-4-1296). Plaintiff alleges in grievance number 2006-4-1296 that the fact that a caseworker told him he could not appeal without a grievance number in violation of AR 740 impeded his right to access the grievance process, and as a result, his access to the courts. *Id.* The prison denied plaintiff's informal grievance on February 23, 2006, which was returned to plaintiff on March 9, 2006. *Id.* Plaintiff filed a first level appeal on March 15, 2006, which the prison denied on March 28, 2006 and returned to plaintiff on April 7, 2006. *Id.* Plaintiff filed a second level appeal on April 21, 2006, which the prison denied on June 14, 2006 and returned to the plaintiff the same day. *Id.* As noted above, the PLRA requires that prisoners exhaust administrative remedies *before* bringing an action in federal court. *Andrews v. King*, 398 F.3d 1113, 1116, n. 2 (9 Cir. 2005) (*citing* 42 U.S.C. § 1997e(a) ("No action shall be brought... until such administrative remedies... are exhausted"). Because plaintiff filed this lawsuit on April 24, 2006, the court concludes that

plaintiff did not exhaust his administrative remedies for the November 25, 2005 missing grievance before bringing this lawsuit.

Additionally, the evidence reveals that plaintiff did not exhaust his administrative remedies with respect to the December 12, 2005 temporary restraining order he alleges defendant destroyed. None of the plaintiff's possibly relevant exhibits indicates that plaintiff exhausted his administrative remedies with respect to this temporary restraining order. Plaintiff's Exhibits Z, AA, BB and CC involve four brass slips for legal mail mailed on the following dates: November 2, November 2, November 7 and November 14, 2005 (#39). Plaintiff alleges in Exhibit CC that defendant failed to mail the documents he gave to the prison on these dates; however, none of these pieces of mail could possibly be the copy of the temporary restraining order because plaintiff stated that he mailed a copy of the restraining order to defendant on November 27, 2005 (#16, p. 3). Plaintiff's other evidence similarly does not involve the temporary restraining order. *See* Exhibit FF (stating that defendant would not allow him to appeal grievance numbers 2005-4-13275, 2005-4-13059, and 2005-4-13686); *see also* Exhibit HH (stating that defendant destroyed "three grievances"). The court grants defendant's motion as to count IV.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that despite being quite adept at the prison grievance process, the plaintiff failed to exhaust his administrative remedies. As such, the court recommends that defendant's motion to dismiss (#20) be **GRANTED**.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days

of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion to dismiss (#20) be **GRANTED**.

**DATED:** February 20, 2007.

_Valerie P. Cooke_
_____

**UNITED STATES MAGISTRATE JUDGE**

21